**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 14 CR 543 - 9 |
| v. | ) | |
| | ) | |
| | ) | |
| RICARDO HERNANDEZ | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Defendant Ricardo Hernandez has moved for a judgment of acquittal. (R.235). For the reasons explained in detail below, the Court denies Defendant's motion.

## BACKGROUND

On January 7, 2015, the grand jury returned a ten count indictment charging Defendant Ricardo Hernandez and nine co-defendants. On December 9, 2015, the grand jury returned a four count superseding indictment (the "Indictment") against Defendant Ricardo Hernandez. Count One of the Indictment charged him with knowingly and intentionally possessing with intent to distribute and distribute a controlled substance, namely heroin and marijuana, in violation of 21 U.S.C. § 841(a)(1). Count Two charged Defendant Hernandez with, on or about September 19, 2013, knowingly and intentionally possessing with intent to distribute and distribute a controlled substance, namely cocaine, in violation of 21 U.S.C. § 841(a)(1). Counts Three and Four charged Defendant with knowingly and intentionally using a cellular telephone to facilitate the commission of a conspiracy to possess with intent to distribute a controlled substance. Count Three took place on September 25, 2013 and Count Four took place on September 26, 2013.

Defendant pled not guilty to each of the counts and proceeded to a jury trial on February 23, 2016. During the trial, the government called the following witnesses: Drug Enforcement Administration ("DEA") Special Agent Bruce Colin Dickey, DEA Special Agent Timothy Oko, Federal Bureau of Investigation ("FBI") Special Agent Tyler Kazee, Department of Homeland Security / Immigration and Customs Enforcement Special Agent Rodney Johnson, FBI Staff Operations Specialist Kevin Hegi, and Jorge Sanchez. Defendant Ricardo Hernandez also testified at trial. On February 25, 2016, the jury returned a verdict of guilty on Counts One, Three and Four, and a verdict of not guilty on Count Two. Defendant now seeks a judgment of acquittal.[1]

## LEGAL STANDARD

Rule 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When, as here, a defendant makes a Rule 29(a) motion at the close of the government's case, and the court reserves decision, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

"In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010); *see*

---

[1] As an initial matter, Defendant has raised multiple arguments, many in one or two simple sentences without any development. The Seventh Circuit has made clear that undeveloped and merely perfunctory arguments like this are waived. *See United States v. Hassebrock,* 663 F.3d 906, 914 (7th Cir. 2011) (finding the argument was "decidedly underdeveloped and therefore waived"); *United States v. Foster,* 652 F.3d 776, 792 (7th Cir. 2011) ("As we have said numerous times, undeveloped arguments are deemed waived[.]") (internal quotation marks and citation omitted). *See also Willis v. Lepine,* 687 F.3d 826, 836 (7th Cir. 2012) ("Merely reciting the Rule 59(a) standard and then tossing the motion into the court's lap is not enough. Failure to adequately present an issue to the district court waives the issue on appeal."); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived ..."). Despite Defendant's waiver of some of these arguments, the Court will address each argument to the extent possible.

*also United States v. Jones*, 713 F.3d 336, 339-40 (7th Cir. 2013); *United States v. Berg*, 640 F.3d 239, 246 (7th Cir. 2011); *United States v. Dinga*, 609 F.3d 904, 907 (7th Cir. 2010); *United States v. Morris*, 576 F.3d 661, 665-66 (7th Cir. 2009). Indeed, a "defendant faces an uphill battle in challenging the sufficiency of the evidence." *United States v. Orlando*, __ F.3d __, 2016 WL 1599790, at *3 (7th Cir. Apr. 21, 2016). The reviewing court will view the "evidence in the light most favorable to the prosecution," and the defendant "'must convince' the court that, even in that light, 'no rational trier of fact could have found him guilty beyond a reasonable doubt.'" *Warren*, 593 F.3d at 546 (quoting *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009)); *see also United States v. Rahman*, 805 F.3d 822, 836 (7th Cir. 2015). In other words, a court will "set aside a jury's guilty verdict only if 'the record contains no evidence, regardless of how it is weighed,' from which a jury could have returned a conviction." *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009) (quoting *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)); *see also Warren*, 593 F.3d at 546.

It follows that under Rule 29, courts "do not reassess the weight of the evidence or second-guess the trier of fact's credibility determinations." *United States v. Arthur*, 582 F.3d 713, 717 (7th Cir. 2009); *see also United States v. Severson*, 569 F.3d 683, 688 (7th Cir. 2009). This strict standard recognizes that "[s]orting the facts and inferences is a task for the jury." *Warren*, 593 F.3d at 547. The Seventh Circuit teaches that:

> [t]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3

*Moore*, 572 F.3d at 337 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

## ANALYSIS

I.     **The Record Reasonably Supports A Finding of Guilt on Count One**

Count One charged Defendant Hernandez with conspiracy to possess with intent to distribute and distribute controlled substances. In order to prove Defendant guilty of Count One, the government had to prove beyond a reasonable doubt that 1) the conspiracy as charged in Count One existed, and 2) Defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy. *See Orlando*, __ F.3d __, 2016 WL 1599790 at * 3. Viewing the evidence in the light most favorable to the government, it more than met its burden.

Defendant argues that there was no evidence that he was a part of a conspiracy, no evidence that he set any price, determined any quantity, or decided on any transaction location, and no evidence of his knowledge or intent to distribute. He further argues that the government did not recover or test any drugs in the case. These arguments, however, are unavailing when viewing the evidence introduced at trial. Specifically, the evidence at trial showed that Defendant went to his co-conspirator Balmore Urbano in October 2012 after he lost his job. He then began picking up heroin and cocaine from co-schemer Jorge Sanchez and delivering it to Urbano, who would typically pay him $100 per delivery. He maintained this "runner" role for the conspiracy, helping the drug organization obtain drugs for distribution.

Defendant confessed to his role in the conspiracy to Special Agent Johnson. Not only did Agent Johnson testify at trial regarding Defendant's confession, but the jury also saw the videotape of the confession. As Agent Johnson testified, he interviewed Defendant on September 30, 2014, after he was arrested. During the interview, Defendant explained his

involvement in the conspiracy, including Defendant's role in obtaining the drugs from Jorge Sanchez, the man he knew as "California," and taking them back to Balmore Urbano, his cousin's boyfriend. He explained that Sanchez would provide him with the drugs and Urbano would pay him for his role. Hernandez was Urbano's "runner." Hernandez further explained that it "was heroin and sometimes cocaine, but I never seen it. Like I would get it and give it straight to B." According to Hernandez, the drugs looked like "a brick," and Urbano paid him $100 per "brick." Defendant argues that the Court should disregard his confession because "it is reasonable to argue that in his attempt to cooperate on a subject he obviously knew little about, Mr. Hernandez came off as confused and inconsistent and nothing in his statement was corroborated by any other government evidence." (R.235, Mot. ¶ 7). When ruling on a Rule 29 motion, however, the Court does not reassess the weight of any evidence or make any credibility determinations. *See United States v. Boros*, __ Fed. Appx. __, 2016 WL 231140, at *4 (7th Cir. Jan. 20, 2016). Viewing this evidence in the light most favorable to the government, the record easily supports a finding of guilt on Count One.

In addition to Defendant's videotaped confession, the government also introduced wiretap evidence during the course of the trial, including intercepted phone calls and texts. On September 25, 2013, for example, a call took place between Sanchez and Urbano in which Sanchez said he was ready and Urbano told him that he was going to have his "cousin" call him "so that you guys meet around there." "Cousin" referred to Defendant Hernandez. When Defendant later contacted Sanchez to set up a time to meet and obtain the drugs, the following exchange took place:

    Sanchez:    Well I had to go somewhere else and the people never answered. So I'm going to wait for them to call me back now.

    Herenandez:    Alright. Are you going to call me back?

| | |
|---|---|
| Sanchez: | Yeah-yeah, I'll call you. |
| Hernandez: | Alright this is my number hit me up here. |
| Sanchez: | Alright, that's it—we're set too. Bye. |

Sanchez told Defendant that he had not met his suppliers to obtain the drugs, and that he would call Defendant back after he had met with them. Sanchez subsequently called Urbano to let him know that Sanchez had not met with his suppliers yet; thus, he did not have any drugs to deliver.

On September 26, 2013, Hernandez texted Sanchez: "It's Gordos cousin what's up." Approximately twelve minutes later and after Sanchez met with his suppliers, Hernandez and Sanchez had the following intercepted call:

| | |
|---|---|
| Hernandez: | Yeah, what's up bro? |
| Sanchez: | Nothing. I went – I was just in a meeting. |
| Hernandez: | Oh, okay. My bad. |
| Sanchez: | Yea-yeah. I was in a meeting with my brother and uh and I in – at the store and the managers, but no that no-no-uhm— |
| Hernandez: | They ran out? |
| Sanchez: | They ran out of the pants there. |
| Hernandez: | Uh-huh. |
| Sanchez: | They ran out so they're going to wait for them – yeah, a couple more days. But well --- |

\*\*\*

| | |
|---|---|
| Sanchez: | To put them away, but – tell him that they ran out, that I'll call him back. |
| Hernandez: | Okay. |

These calls demonstrated Defendant's knowing participation in the conspiracy. Defendant called Sanchez to schedule a time to meet and obtain the drugs after Urbano initially spoke with Sanchez. They used "pants" to refer to the drugs, and Sanchez explained that his supplier did not have any drugs so he could not give any to Defendant. Sanchez also testified at trial and confirmed that "pants" was code for a kilogram of cocaine. Additionally, Sanchez confirmed that he gave cocaine to Defendant to deliver to Urbano, whom Sanchez referred to as "Gordo."

The government also introduced phone records at trial and demonstrated that the cell phone utilized by Defendant to communicate with his co-conspirators was a "burner phone" that could not be traced. He used this phone to hide his drug deals. Defendant opened this phone account shortly after he obtained cocaine from Sanchez. Defendant also maintained a separate phone in his name that he did not use for drug transactions.

This evidence was sufficient evidence from which a reasonable jury could find Defendant guilty of the conspiracy charged in Count One. As such, the Court denies Defendant's motion for judgment of acquittal on Count One.

## II. The Record Reasonably Supports A Finding of Guilt on Counts Three and Four

Defendant next argues that because "there is no proof of conspiracy or intent to distribute and the jury found Hernandez not guilty of possession," the phone counts should fail as well because "any phone use was not shown to have occurred knowingly and intentionally to further a felony drug crime." As described above, however, the government more than met its burden on Count One. Defendant's argument on Counts Three and Four, thus, fails.

Defendant's argument also fails because even if there was a basis for acquittal on Count One (which there is not), he is not entitled to acquittal on Counts Three and Four under the law. In essence, Defendant claims that an acquittal on Count One and a guilty verdict on Counts

Three and Four would be inconsistent. The Supreme Court has made clear, though, that mere inconsistent verdicts are not a basis for a judgment of acquittal. In *United States v. Powell*, a jury acquitted the defendant of a drug conspiracy charge, but found him guilty of using the telephone to facilitate the drug conspiracy. In rejecting the defendant's argument that the jury could not have properly found him guilty on the telephone charges and not guilty on the conspiracy, the Supreme Court stated that where a jury returns an inconsistent verdict, "[t]he most that can be said … is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *United States v. Powell*, 469 U.S. 57, 63 (1984). *See also United States v. Wilbourn*, 799 F.3d 900, 911 (7th Cir. 2015) ("But an acquittal of the underlying offense does not mean that there must be an acquittal on the phone counts"); *United States v. McGee*, 408 F.3d 966, 985 (7th Cir. 2005) (same). Indeed, "[t]ypically, a guilty verdict will stand (so long as the evidence is sufficient to support it) notwithstanding an inconsistent verdict on a related offense, even if conviction on the latter is a predicate to the conviction of the former." *Wilbourn*, 799 F.3d at 911 (citing *United States v. Moore*, 763 F.3d 900, 910 (7th Cir. 2014)). As such, Defendant is not entitled to acquittal on Counts Three and Four even if there was any basis for acquittal on Count One.

Furthermore, as described above, the government proved beyond a reasonable doubt that Defendant used his cell phone on September 25, 2013 to facilitate the commission of the drug conspiracy and knowingly did so, as charged in Count Three. The government further established that Defendant used his cell phone on September 26, 2013 to facilitate the drug conspiracy with Urbano and knowingly did so, as charged in Count Four.

## CONCLUSION

For the reasons discussed in detail above, the Court denies Defendant's motion for a judgment of acquittal.

Dated: May 11, 2016                               ENTERED

                                                                  _____
                                                                  AMY J. ST. EVE
                                                                  United States District Court Judge